UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Craig A. D.,<br><br>                      Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>                      Defendant. | Civil No. 3:25-cv-001045 (MEG)<br><br><br><br>April 29, 2026 |

## RULING ON PENDING MOTIONS

Plaintiff, Craig D.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. ECF No. 1. He seeks an order reversing the Commissioner's decision and remanding the case for a new hearing. ECF No. 18. The Commissioner seeks an order affirming the ALJ's decision. ECF No. 26.

For the reasons that follow, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **GRANTED (ECF No. 18)** and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **DENIED. (ECF No. 26).**

---

[1]     Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for Disability Insurance Benefits under Title II and Supplemental Security Income ("SSI") under Title XVI, on November 28, 2022. He alleges disability beginning February 22, 2022. (R. 17.) He claimed an inability to work due to the following impairments: amplified musculoskeletal pain syndrome, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, somatic symptom disorder, autism spectrum disorder, language disorder, and learning disorder. (R. 17.) His applications were denied initially on May 16, 2023, and upon reconsideration on September 14, 2023. (R. 17, 71-114.)

On June 27, 2024, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (R. 14-41.) ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims, and ALJ Louis Bonsangue's written decision follows that format. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since April 30, 2022, the alleged onset date. (R. 20.) At Step Two, he found that Plaintiff suffers from the severe impairments of anxiety, depression/bipolar disorder, and degenerative disc diseases ("DDD") of the lumbar spine.[2] (R. 20.) At Step Three, he concluded "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1." (R. 21.) The ALJ determined he had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. He can frequently balance, and occasionally stoop, kneel, crouch, and crawl. Also, he must avoid concentrated exposure to vibrations, moving parts and machinery, and unprotected heights. He can perform simple, routine, and repetitive tasks with no public contact and no collaborative or teamwork. .

---

[2]    The ALJ also reviewed the evidence of record regarding Plaintiff's bilateral inguinal hernias both pre-surgical and post-surgical repair, and right-sided groin pain, but found that these conditions were not "'severe' impairments as defined in the regulations." (R. 20-21.)

(R. 23.)

At Step Four, the ALJ determined that Plaintiff had no past relevant work. (R. 33.) Finally, at Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner-housekeeping, marker, and mail clerk. (R. 34.) Accordingly, the ALJ determined that Plaintiff was not disabled from November 28, 2022, the filing date, through June 27, 2024, the date of the decision. (R. 34-35.)

## II.  APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id.* At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age,

education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal citations and quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citations and quotation marks omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he or she has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law

4

has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).

### III. FAILURE TO DEVELOP THE RECORD

Social Security adjudication is not "adversarial" but "inquisitorial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Although many agency systems of adjudication are based to a significant extent on the judicial model of decision[-]making, the SSA is perhaps the best example of an agency that is not."). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*citing Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks and brackets omitted)). An ALJ is required to develop a claimant's complete medical history for at least the twelve-month period prior to the filing of his application, as well as gather such information for a longer period, if there is "reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (*citing* 42 U.S.C. § 423(d)(5)(B)).

### IV. APPLICATION

The Court finds that the ALJ failed to adequately develop the record with respect to Plaintiff's ability to perform work-related functions. Specifically, the record lacks updated Medical Source Statements assessing Plaintiff's physical functioning post-Hernia surgery and lacks the medical records for a back surgery that was scheduled post-ALJ hearing on March 20, 2024, and/or other treatment records for back pain. (R. 60 (ALJ requesting Medical Source Statements from Plaintiff's Chiropractor, Orthopedist, and/or primary care providers treating for low back problems and discussing submission of additional hospital records for double hernia surgery and upcoming back surgery).)

A consultative examination was performed on April 20, 2023, by Camylle Appiahene, APRN to assess degenerative disc disease and chronic back pain. (R. 618-21.) A physical examination was performed. "No medical records [were] available for review." (R. 618.) APRN Appiahene noted that Plaintiff sustained a back injury in 2018 and again two years later. *Id.* Plaintiff reported he could not lift more than 8 pounds and had difficulty bending, squatting and standing for prolonged periods. He rated his pain at a 7 out of 10. *Id.* Plaintiff also reported that he was diagnosed with an umbilical hernia and experienced pain when he lifts certain items. *Id.* On examination, she noted "tenderness to paravertebral muscles bilaterally, worse on right side"; positive straight leg raise (SLR) test bilaterally; abnormal stance leans to the right; able to balance on right foot but not left; lumbar spine forward flexion 70 with pain out of 90 (normal); backward extension 15 with pain out of 30 (normal); left lateral rotation 20 with pain out of 30 (normal); right lateral rotation 20 with pain out of 30 (normal). (R. 620.) She stated in relevant part, that "[b]ased on this physical examination and claimant's reported symptoms, claimant may have difficulty performing physical demands of work such as lifting, repetitive bending, squatting and standing/walking for prolonged periods. He may need a psychiatric evaluation to determine the severity of his mental health conditions." (R. 621.) This assessment predates Plaintiff's surgeries by almost a year.

On January 22, 2024, Plaintiff underwent a new patient visit/initial consult at Interventional Pain and Musculoskeletal Medicine, with Kevin M. Chandon, PA-C, under supervising physician Dr. David E. Gutierrez, for back pain. (R. 952-59; 1032-40 (duplicate).) A physical examination was performed and x-rays and MRI reports were reviewed and summarized. The medical provider "discussed pursuing bilateral sacroiliac joint corticosteroid injections to relieve the pain in his sacroiliac joint dysfunction" noting that conservative measures in the form of physical therapy,

home exercise and medication therapy failed. (R. 953, 1032.) PA Chandon also stated that Plaintiff "may also return for trigger point injections to the paralumbar fascia where he is also very tender on palpation. *Id.* Plaintiff was directed to return for a follow-up appointment 2 weeks after his sacroiliac joint injections. *Id.* A review of x-ray and MRI reports showed lumbar spondylosis, including L1-L2 with facet hypertrophy, mild canal stenosis, mild bilateral foraminal stenosis, L2-L3 with mild canal stenosis of which ligamentum flavum hypertrophy and facet hypertrophy are components, moderate left and mild right foraminal stenosis, moderate left and right foraminal stenosis; and L5-S1 with no significant canal stenosis, mild left foraminal stenosis. (R. 954, 1034.) On examination, Plaintiff reported a pain score of 6 for low back, sharp shooting pain, constant/continuous/ongoing, that is aggravated with walking, bending, exercise, kneeling, squatting, stairs, standing, straightening, stretching. (*Id.*) PA Chandon noted extension and lateral side bending of the lumbar spine reproduced pain, palpation over the lumbar paraspinal musculature and palpation caused pain. He noted positive FABER (Patrick's Test), Sacroiliac Joint Compression, Gaenslen test, Fortin test and Axial Facet Loading, 5/5 for motor testing and normal sensation and reflexes. (R. 956, 1038.) There are no follow-up treatment records from Interventional Pain and Musculoskeletal Medicine.

Plaintiff underwent double hernia surgery on February 1, 2024. (R. 966-90; 1058-1108.)

On March 4, 2024, during the ALJ's hearing, Counsel for Plaintiff stated that treatment records from Plaintiff's chiropractor are "significant for abnormal physical examinations of tenderness to palpation and positive trigger points, et cetera." (R. 59-60.) The ALJ asked Counsel "if any of those, the chiropractor or other doctors that are treating for the low back were asked to prepare a source statement?" (R. 60 (including "ortho or primary care").) Counsel responded, "we did send that to Mr. Duquette, and I did speak to him about that. And I am hopeful that we an get

7

that as well in addition to the hospital record that will reflect the surgery for the double hernia surgery and the upcoming back surgery" scheduled for March 20, 2024. *Id.* The ALJ indicated that he would hold the record open 30 days stating, "I'm hoping that you can get the records for the [March 20] surgery as well . . .that's you know only two weeks away, so hopefully 30 days you can get that. If you need more time, just write us a letter." *Id.*

On April 1, 2024, Raya Anella, APRN completed a Physical Impairment Questionnaire, noting that she "has treated this patient since March 28, 2024", three days before completing the questionnaire. She stated "[t]his was my *1st* first meeting w[ith] this patient but he has been seen by this practice" since January 7, 2019. (R. 869 (emphasis added)). Nurse Anella reported that Plaintiff was experiencing "constant" and "chronic low back pain" from lumbar degenerative disc disease and was "not a surgical candidate-likely long lasting." (R. 867.) She recorded that Plaintiff reported side-effects from his medications that included gastrointestinal upset and drowsiness. *Id.* As a result of his impairments, she stated that outside of customary breaks, he would need to recline or lay down during an 8-hour workday; he could walk one block, sit for 15 minutes at one time and stand/walk for 15 minutes at one time; and sit; stand, walk a total of one hour in an 8-hour workday; and estimated that Plaintiff "needs to be supine every hour[] for 15 minutes." *Id.* She stated Plaintiff could occasionally lift less than 10 pounds and could use his bilateral hands 20% of the time in an 8-hour workday to handle and finger and could not use his arms to reach. (R. 868.) She estimated that Plaintiff would be absent from work more than four times a month and was not capable of working an 8-hour day, five days a week on a sustained basis. *Id.*

It is unclear whether Nurse Anella performed a physical examination of Plaintiff prior to completing the Physical Impairment Questionnaire. The Court was unable to locate a treatment record dated March 28, 2024, documenting an appointment with Nurse Anella. There is no record

of any treatment history with Nurse Anella prior to completing the questionnaire. Moreover, she does not account for the January 2024 treatment recommendations made by Interventional Pain and Musculoskeletal Medicine, or the February 2024 hernia surgery or March 2024 back surgery and how it impacts Plaintiff's ability to function in a work setting.

The ALJ found Nurse Anella's opinion "not persuasive as it is generally not consistent with and supported by the medical evidence of record[.]" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician."). The ALJ added that "this medical provider only personally treated the claimant one time before filling out this statement and the medical records from the treating facility are not consistent with the opined level of limitation reported[.] Also, nowhere in the medical evidence of record does it show that the claimant was diagnosed with and had signs supporting an impairment that would support the limitations of the use of his hands as opined by Nurse Anella." (R. 31-32.)

As a result, the record contains <u>no</u> physical functional assessment or RFC assessments from any of Plaintiff's medical providers since undergoing the double hernia and back surgery and/or whether Plaintiff received the recommended injections to his back or other non-surgical treatment that might impact the physical RFC. In order to satisfy his threshold duty to develop the record, the ALJ had an obligation to obtain an opinion from Plaintiff's medical sources and the doctors Plaintiff referenced in his hearing testimony. (R. 60.) *See Alvarez v. Comm'r of Soc. Sec.,* No. 14-CV-3542 MKB, 2015 WL 5657389, at *18 (E.D.N.Y. Sept. 23, 2015). Given this record, and the colloquy during the ALJ's hearing, the ALJ was obligated to obtain, at a minimum, updated surgical and treatment records and Medical Source Statements from Plaintiff's medical providers

9

regarding his treatment for back pain and subsequent treatment and surgery. (R. 59-50.) *See Caban v. Comm'r of Soc. Sec.*, No. 18-CV-929 (PKC), 2019 WL 4254000, at *4–5 (E.D.N.Y. Sept. 9, 2019) (remanding for failure "to solicit updated and current medical opinions from Plaintiff's treating sources or from consultative examiners or any expert, following the progression of Plaintiff's symptoms after her February 2015 surgery"); *Knepple-Hodyno v. Astrue*, No. 11-CV-443 (DLI), 2012 WL 3930442, at *8 (E.D.N.Y. Sept. 10, 2012) (remanding for failure to develop the record where ALJ failed to obtain updated assessments, post-surgery opinions of claimant's RFC); *Cordova v. Saul*, No. 3:19-CV-628 (JCH), 2020 WL 4435184, at *4–5 (D. Conn. Aug. 3, 2020) (remanding where ALJ failed to obtain a medical source statement from treating physician and treatment notes alone were insufficient to fill the gaps in the record). "This rule applies even where the plaintiff was represented by counsel at the hearing." *Vazquez v. Comm'r of Soc. Sec.*, No. 14-CV-6900 (JCF), 2015 WL 4562978, at *17 (S.D.N.Y. July 21, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)).

The ALJ explicitly held the record open at the hearing to allow time for the submission of treating source statements from his chiropractor, orthopedist and primary care physicians and surgical records for his scheduled March 20, 2024, back surgery. (R. 60.) "This should have been an indication to the ALJ that he needed to supplement the record with the surgical records, as well as the need to obtain an updated assessment of [Plaintiff's] RFC, but the record does [not] contain any indication that the ALJ followed up with [Plaintiff's] treating physicians to obtain these additional records or their medical opinions." *Manzella v. Comm'r of Soc. Sec.,* No. 20-CV-3765 (VEC)(SLC), 2021 WL 5910648, at *15 (S.D.N.Y. Oct. 27, 2021), *report and recommendation adopted*, No. 20-CV-3765 (VEC)(SLC), 2021 WL 5493186 (S.D.N.Y. Nov. 22, 2021); *Alessi v. Colvin*, No. 14-CV-7220 (WFK), 2015 WL 8481883, at *6 (E.D.N.Y. Dec. 9, 2015) ("[G]iven the

10

gaps in the record and the absence of a thorough and sufficient medical assessment of Plaintiff's ability to sit, stand, walk, or lift from any physician who had seen the lumbar and cervical MRIs, the ALJ committed legal error by deciding Plaintiff could perform past relevant work without seeking to fill this gap."). Although the record contains treatment notes submitted after the ALJ's hearing, it does not contain the surgical records from the March 2024 back surgery or an assessment of Plaintiff's functional limitations provided by his chiropractor, orthopedist or primary care physician, which the ALJ could rely upon in formulating the physical RFC.[3] *Reynolds v. Comm'r of Soc. Sec.,* No. 17-CV-755 (FPG), 2019 WL 688874, at *4 (W.D.N.Y. Feb. 19, 2019). Thus, by failing to solicit these records following the hearing, the ALJ did not adequately develop the record. The failure to do so precludes this Court's determination of whether the ALJ's denial of benefits was based on substantial evidence. *Alvarez*, 2015 WL 5657389, at *18. Remand is, therefore, warranted.

On remand the ALJ should assist Plaintiff in obtaining his surgical records and supplemental information from his treatment providers, physicians and other caregivers regarding "work-related functional limitations or abilities", including requesting a vocational assessment.

## V. REMAINING ARGUMENTS

Because the Court is remanding this matter for further development of the record, it does not reach the Plaintiff's remaining arguments.[4] The Court declines to address Plaintiff's remaining

---

[3] In his opinion, the ALJ acknowledged that "[a]lthough the claimant testified that he was scheduled for surgery on March 20, 2024, and the claimant's record was left open to obtain outstanding records, no other medical records regarding treatment of his lumbar DDD and low back pain after his January 22, 2024 appointment were received." (R. 27.)

[4] Plaintiff challenges the ALJ's opinion on the following grounds. ECF No. 18-1 at 8-17. First, he argues that the ALJ relied chiefly on the opinions of non-examining state agency physicians, but his rationale for crediting those opinions did not satisfy the requirements of 20 C.F.R. § 1520c and 20 C.F.R. § 416.920c. Second, he argues that remand is warranted because the ALJ discounted the Agency's own consultative examiner without adequate explanation. Third, he

arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Faussett v. Saul*, No. 3:18-CV-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (internal quotation marks omitted); *see also Delgado v. Berryhill*, No. 3:17-CV-0054 (JCH), 2018 WL 1316198, at *19 (D. Conn. Mar. 14, 2018) (holding that because the case is "already being remanded for other reasons," and "because [the Plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis).

On remand, and after further development of the record and a new hearing, to the extent relevant, the ALJ shall consider the other claims of error not discussed in this decision. *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *see also Moreau v. Berryhill,* No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

## VI.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **GRANTED (ECF No. 18)** and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **DENIED. (ECF No. 26).**

---

argues that while the ALJ found Plaintiff's therapist's opinion partially persuasive, he failed to incorporate the assessed need for breaks or explain its omission, in violation of SSR 96-8p. Finally, he contends that the RFC fails to account for the Plaintiff's limitations in concentration persistence, and pace.

The Clerk of the Court will enter judgment in favor of Plaintiff.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF No. 13. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge
